### SHEPHERD v. NEWELL et al.    (No. 992.)

(Court of Civil Appeals of Texas. Beaumont. June 1, 1923.)

1. **Lost instruments** ⊜=23(2)—**Deeds describing land conveyed as that conveyed to grantor by original patentee held competent evidence of execution of lost deed by patentee to grantor.**

In trespass to try title by one claiming as an heir of the original patentee, deeds describing the lands conveyed as part of the land granted to patentee and "conveyed by him to me by deed," held competent evidence of execution of a lost deed from patentee to grantor.

2. **Appeal and error** ⊜=733—**Assignment that judgment is contrary to law and evidence too general for consideration.**

An assignment that "the judgment of the court is contrary to the law and the evidence" is too general for consideration.

Appeal from District Court, Freestone County; A. M. Blackman, Judge.

---

⊜=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Suit by Samuel R. Shepherd against W. E. Newell and others. Judgment for defendants, and plaintiff appeals. Affirmed.

T. H. Bonner and P. O. French, both of Fairfield, for appellant.

Williford & Geppert, of Fairfield, for appellees.

O'QUINN, J. Suit in trespass to try title and for damages to 120.7 acres of land alleged to be a portion of the north half of the Hugh Shepherd league in Freestone county, Tex., brought by appellant for himself and in behalf of the other (unknown) heirs of said Hugh Shepherd against W. E. Newell, A. S. Johnson, J. H. Cook, J. S. Compton, and W. N. Sneed, Jr., appellees. He also sued W. L. Tate and J. C. Bland to cancel a certain oil lease that had been executed on said land. Tate died, and the suit was dismissed as to him.

Appellees answered by general demurrer, several special exceptions, plea of not guilty, general denial, the 1, 3, 5, and 10 year statutes of limitation, and specially that the land in controversy in 1920 was sold for taxes as property belonging to the estates of W. R. Reed and W. R. York, and that appellees A. S. Johnson and W. R. Sneed, Jr., bought same, paid the purchase money, and received a deed thereto, pleaded payment of taxes, improvements in good faith, and further specially pleaded that more than 65 years before the filing of this suit Hugh Shepherd, to whom the land was patented, sold the north half of said land to W. B. Reed, and that the deed from said Hughes to said Reed had been lost, mislaid, or destroyed; that they had and held the legal and equitable title to the land, but that, if mistaken as to this, then there was an outstanding title to said land in the heirs of said W. B. Reed superior to the title of plaintiff, and that the payment of taxes and improvements made in good faith by appellees constituted a lien on said land in their favor.

The case was tried before the court without a jury, and the court found against appellant and in favor of appellees, and rendered judgment accordingly.

Upon request, the court made and filed his findings of fact and conclusions of law, which the record fully supports, and which we here adopt, to wit:

#### "Findings of Fact.

"1. The land in controversy in this suit, being a part of the Hugh Shepherd league survey in Freestone county, Texas, was patented, or granted, to Hugh Shepherd as a colonist, by the government of Coahuila and Texas, in 1835.

"2. The plaintiff, Samuel R. Shepherd, is a son of the original grantee.

"3. (a) On the 5th day of January, 1837, Hugh Shepherd, the original grantee, sold to Frost Thorne and Richard Sparks the south one-half of the league, as shown by deed now of record in Freestone county.

"(b) On the 17th day of July, 1855, one W. B. Reed conveys 400 acres out of the north half of the Shepherd league to his son, James Reed, and recites in the deed that he had theretofore purchased the said north half of the league from Hugh Shepherd, the original grantee.

"(c) On the same date as the above deed, W. B. Reed conveys to his daughter, Margaret Hunt, a portion of the north half of said league, in which deed the same recital, 'a part of the north half of a league of land conveyed by Hugh Shepherd to deed to me,' is made.

"(d) W. B. Reed, on the 12th day of March, 1859, sold to John Reed a portion of the north half of said Hugh Shepherd league, the description of which calls for the 'dividing line' of said league.

"(e) W. B. Reed, on the 24th day of October, 1859, sold and conveyed to his daughter, Lydia Frances Faglie, a portion of the north half of said league.

"(f) The Reed family and the Shepherd family lived in the same community in the early '50's, and plaintiff testified that he was acquainted with the Reeds when he was a boy.

"(g) W. B. Reed died in Hamilton county some time prior to 1876, and probate proceedings in that county show that the unsold portion of the north half of the Hugh Shepherd league was inventoried as a part of his estate, and that his executor and heirs, thereafter, from time to time, sold and conveyed all of the remaining unsold portion of the north half of said league, except the land in controversy.

"(g1) The deeds here mentioned were duly recorded in the deed records of Freestone county, Texas, and many of them were acknowledged before officials of Freestone county, at the county seat of said county.

"(h) The tax records of Freestone county show that the unsold portion of the north half of the Shepherd league was rendered for taxes in the name of W. B. Reed for the years 1881, 1882, and 1883. (This was as far back as the records exist.) For the years 1884, 1885, 1886, and 1887 same appears to have been rendered in the name of the Reed heirs. For the years 1890, 1891, 1892, 1893, 1894, 1895, 1896, 1897, 1898, 1899, and 1900 the unsold portion is shown to have been rendered for taxation by the Reed heirs. For all the years mentioned the Reeds are shown to have paid the taxes on the land in controversy.

"(i) From the recitals in the various instruments offered in evidence, as well as certain oral testimony adduced, the Reeds are shown to have been frequently in Freestone county looking after these lands, claiming same, asserting title thereto, and exercising acts of ownership for a period of more than 40 years.

"(j) The tax records show that the Shepherds have never paid taxes on any portion of this survey, nor is there any evidence of their ever asserting any claim, or exercising any act of ownership over any portion of said survey, until the institution of this suit.

"(k) All the present occupants and claimants of the north half of the Shepherd league, except the tract of land in controversy, deraigned title from W. B. Reed.

"I therefore find as a fact: That Hugh Shep-

herd, the original grantee, conveyed by deed the north half of the Hugh Shepherd league in Freestone county, to W. B. Reed.

"Conclusion of Law.

"The plaintiff claiming only by inheritance as an heir of the original grantee, and the proof showing title out of the original grantee at the date of his death, it follows that judgment should be rendered for the defendants."

On the trial, the defendants offered in evidence a deed from W. B. Reed, of date July 17, 1855, to his son, James Reed, conveying 400 acres of land, and containing this recital:

"Being a part of the north half of a league of land granted to Hugh Shepherd, said north half conveyed by him to me by deed."

Also a deed from W. B. Reed of date July 17, 1855, to his daughter, Mrs. Margaret Hunt, conveying a portion of the north half of said league, the deed containing the following recital:

"Being a part of the north half of a league of land conveyed by Hugh Shepherd by deed to me."

Each of said deeds was duly acknowledged and filed for record July 18, 1855. Appellant objected to the introduction of each of said deeds, on the grounds (1) that same were irrelevant and immaterial, in that the land conveyed by said deeds was no part of the land in controversy; (2) that they were self-serving; and (3) that defendants nowhere in their pleadings raise the question of a lost deed, nor that they expected to prove a lost deed. These objections were overruled, and the court's action in so doing is made the basis of appellant's second assignment of error and the propositions thereunder.

[1] The court did not err. Defendants were endeavoring to establish by circumstantial evidence the execution of the lost deed from Hugh Shepherd to W. B. Reed, which, if established, took out of Shepherd all the title to the north half of the league and left none to descend to appellant. The deeds and the recitals therein were competent evidence for that purpose. Brewer v. Cochran, 45 Tex. Civ. App. 179, 99 S. W. 1033, 1035, 1036; Frugia v. Trueheart, 48 Tex. Civ. App. 513, 106 S. W. 738; Houston Oil Co. v. Sudduth (Tex. Civ. App) 171 S. W. 558; Magee v. Paul, 110 Tex. 470, 221 S. W. 256; Humphreys v. Green (Tex. Civ. App.) 234 S. W. 565. What we have said disposes of appellant's propositions 2 to 14.

[2] Appellant's fifth proposition is: "The judgment of the court is contrary to the law and the evidence in the cause." This is appellant's first assignment of error, stated as a proposition.

This assignment is too general and cannot be considered. Jenkins v. American, etc., Co. (Tex. Sup.) 2 S. W. 726; Koepsel v. Allen, 68 Tex. 447, 4 S. W. 856; Houston v. Blythe,

71 Tex. 719, 10 S. W. 520; American Legion of Honor v. Rowell, 78 Tex. 677, 15 S. W. 217; Melsheimer v. Shaw (Tex. Civ. App.) 223 S. W. 261. However, if it should be urged that said assignment presents fundamental error, in that there is no evidence in the record to support the judgment, it should be overruled. We have considered the entire record, and think the evidence abundantly supports the court's findings of fact and conclusion of law, and hence the judgment. Houston Oil Co. v. Sudduth (Tex. Civ. App.) 171 S. W. 556; Guffey Petroleum Co. v. Hooks, 47 Tex. Civ. App. 560, 106 S. W. 695; Brewer v. Cochran, 45 Tex. Civ. App. 179, 99 S. W. 1035; Magee v. Paul, 110 Tex. 470, 221 S. W. 256, 257; Humphreys v. Green (Tex. Civ. App.) 234 S. W. 565.

Appellant presents other questions, which have all been considered, but we do not think there is any merit in them, and they are all overruled.

The judgment is affirmed.